**Affirmed as Modified and Majority and Concurring Opinions filed December 28, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00369-CV

### KATY SHUK CHI LAU MESSIER, Appellant

### V.

### LUC J. MESSIER, Appellee

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2009-45158**

## M A J O R I T Y   O P I N I O N

Katy Shuk Chi Lau Messier appeals from the trial court's final decree of divorce, dissolving her marriage to appellee Luc J. Messier. In three issues, Katy challenges the trial court's grant of permanent injunctions primarily concerning international travel with the children of the marriage. We modify the trial court's final decree and, as so modified, we affirm.

*Background*

Luc and Katy were married in 1998 and have two minor children. Luc is from Canada and Katy is from Hong Kong. Neither is a United States citizen, but the family has lived in Houston for several years. In 2009, Luc filed for divorce and Katy filed a counter-petition. At trial, both sought to be named sole managing conservator of the children. In his First Amended Petition, his live petition at the time of trial, Luc additionally requested "the Court to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Luc also prayed for "general relief."

During trial before a jury, evidence was presented regarding erratic behavior by Katy, including threats to commit suicide and harm the children if Luc did not permit her to move back to Hong Kong with them, her dissatisfaction with life in the United States and Houston in particular, allegations she made to one of the children about Luc, and a threat to accuse Luc of rape while they were in Hong Kong so that he would be arrested. Additional, substantial evidence was presented regarding Katy's desire to return to Hong Kong to live with her children. Much of this evidence was in the form of testimony by Luc, but it also included testimony by mental health professionals, audio and video recordings, and documentary evidence. Luc in particular expressed considerable concern that Katy would leave the country with the children.

At the conclusion of a trial before a jury, the jury named Luc sole managing conservator of the children.[1] The trial judge also made determinations regarding the division of marital assets as well as possession of and access to the children. In this appeal, Katy only challenges the trial court's imposition of certain requirements of and restrictions on Katy. As numbered by Katy, the court enjoined her from (1) removing the children from the State of Texas or the United States without Luc's written consent, (2)

---

[1] Although not relevant to this appeal, the jury also found no cruel treatment by Luc as Katy had alleged as grounds for divorce. Additionally, the jury rejected a tort claim by Katy for abuse of process. Katy had alleged that Luc abused the legal process by having her committed to a mental health facility against her will.

applying on behalf of the children for new or replacement passports or international travel visas, (3) interfering with Luc's possession of the children, (4) hiding or secreting the children from Luc, and (5) discussing the case or any matter related thereto with the children or in their presence.[2]  The court further ordered Katy to (1) surrender any passports she may have for the children, (2) provide to the United States State Department and the consulate or embassy of "Hong Kong and the People's Republic of China" written notice of the order's travel and passport restrictions, (3) provide to those entities a copy of the court's order, (4) provide to those entities proof of Katy's agreement to the order's restrictions, and (5) provide to the trial court proof of receipt for items 2 through 4.

Certain of this relief appears modeled after the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code, which are to be considered by the trial court upon a finding of a potential risk of international abduction under sections 153.501 and 153.502.  Tex. Fam. Code §§ 153.501-503.  However, in its "Rendition and Verdict," the trial court stated,

> Based upon careful consideration after the mandatory review of the factors set out in Texas Family Code Section 153.502 as a prerequisite to such determination, the court is unable to find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent. The court has included in the decree provisions found to be in the best interest of the children that the court believes are within the discretion of the court and are not dependent on a finding contemplated by Family Code Section 153.501.

Furthermore, the court stated as follows in its findings of fact:

> The court, having reviewed Texas Family Code § 153.502, does not find that credible evidence has been presented indicating a potential risk of the international abduction of the children by a parent, as required by §153.502; however, the court does find that certain injunctions and conditions regarding international travel are in the best interest of the children, as set forth in the Final Decree of Divorce.

---

[2] Although there may be several ways to parse the court's orders, we adopt Katy's divisions for ease of reference.

In its conclusions of law, the court then listed the same injunctions as discussed above.

In three issues, Katy specifically contends that the trial court erred in entering the injunctions because (1) Luc did not plead for such injunctive relief, (2) the evidence was insufficient to support the injunctions, and (3) the court's order failed to comply with the requirements for issuing a permanent injunction. We will discuss each issue in turn.

*Sufficiency of the Pleadings*

In her first issue, Katy contends the trial court erred in entering certain of the injunctions against her because no pleadings supported that relief. As stated above, in his live petition at the time of trial, Luc requested "the Court to determine whether there is a risk of international abduction of the children by [Katy] and to take such measures as are necessary to protect the children." Luc further prayed for "general relief." Katy specifically argues that Luc's pleadings were insufficient to support the injunctions the court entered related to international travel.

Texas Rule of Civil Procedure 301 requires that a judgment "conform to the pleadings" filed in the case. Tex. R. Civ. P. 301. In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance. *E.g., Cain v. Cain*, No. 14-07-00114-CV, 2007 WL 4200638, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.) (holding that determining the best interest of the child should not be hampered by "narrow technical rulings"); *Halla v. Halla*, No. 14-06-01126-CV, 2007 WL 2367600, at *2 (Tex. App.—Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op.) (explaining that, in child custody and support cases, "detailed pleadings are not required"); *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) (holding a trial court has discretion to place conditions, including a permanent injunction, on parental visitation even if the pleadings do not request such conditions); *see also Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 WL 1888343, at *5 (Tex. App.—San Antonio July 3, 2007, pet. denied) (holding that "the prayer for general relief, the allegations and requests within the petition, and the evidence presented authorized the trial court to order the permanent injunction").

4

Pleadings must at a minimum notify the opposing party of the claim involved. *Halla*, 2007 WL 2367600, at *2 (citing Tex. R. Civ. P. 47(a)).[3]

Here, Luc's live pleadings raised the issue of international travel with the children by Katy, going so far as to allege a risk of international abduction. Moreover, Luc requested general relief and that the court "take such measures as are necessary to protect the children," a clear request for nonmonetary relief and an apparent reference to the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code, which specifically references injunctive relief, among other options. Under the circumstances of this child custody case, we find that Luc's pleadings sufficiently supported the injunctive relief.[4]

*Permanent Injunction Requirements*

In her third issue, Katy contends that the trial court abused its discretion in granting injunctive relief in the final decree when Luc failed to plead or prove the traditional requirements for permanent injunctions: (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the lack of an adequate remedy at law.[5] *See generally Jones v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 742 (Tex. App.— Houston [1st Dist.] 2002, pet. denied). However, as this court and other courts have explained, these traditional requirements are not strictly applicable in the child custody context; rather, courts routinely grant permanent injunctions in such cases consistent with the best interests of the children. *See, e.g., In re B.J.W.S.*, No. 14-08-01154-CV, 2010 WL 4396291, at *9 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.); *see also*

---

[3] In arguing that a trial court may not grant permanent injunctions in a divorce context if not specifically pleaded for, Katy relies upon cases not involving children. *See Falor v. Falor*, 840 S.W.2d 683, 687 (Tex. App.—San Antonio 1992, no writ); *Ulmer v. Ulmer*, 717 S.W.2d 665, 666-67 (Tex. App.—Texarkana 1986, no writ); *Morgan v. Morgan*, 657 S.W.2d 484, 493-94 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). These cases are therefore readily distinguishable.

[4] At no point in her briefing does Katy specifically argue that the trial court's prohibitions on her discussing the case around the children, interfering with Luc's possession, or hiding or secreting the children were not supported by the pleadings or otherwise tried by consent. *See generally* Tex. R. Civ. P. 67.

[5] To some extent, Katy also raised this argument in her second issue.

*Peck*, 172 S.W.3d at 35 (finding no abuse of discretion in granting a permanent injunction in custody case where traditional requirements were not met). We will address the injunctions and the evidence as they pertain to the best interests of the children in the next section of the opinion. We overrule Katy's third issue in its entirety as well as her second issue to the extent it is based on strict application of these traditional requirements.

### *Abuse of Discretion*

In her second issue, Katy generally contends that the trial court abused its discretion in granting certain permanent injunctions because the evidence does not support granting those injunctions.[6] We review a grant of a permanent injunction under an abuse of discretion standard. *Arredondo v. Betancourt*, No. 14-11-00742-CV, 2012 WL 4829801, at *8 (Tex. App.—Houston [14th Dist.] Oct. 11, 2012, no pet. h.). A trial court has broad discretion in determining the best interest of a child in family law matters. *E.g., In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002. The trial court is typically in the best position to observe the demeanor and personalities of the witnesses and to understand influences on the family dynamic that cannot be discerned by mere reference to the record. *See In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.).

An abuse of discretion occurs when a court acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). A trial court also abuses its discretion if it fails to apply the law correctly. *Id.* An abuse of discretion does not occur if some evidence of a substantive and probative character exists to support the trial court's decision and that decision constitutes a correct

---

[6] Katy also argues in her second issue that, alternatively, the evidence was factually insufficient to support the imposition of the injunctions. However, when the best interests of the child are at issue, as here, sufficiency of the evidence is not the correct standard for review. *Peck*, 172 S.W.3d at 36.

6

application of the law. *See Arredondo*, 2012 WL 4829801, at \*8. Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are relevant factors in assessing whether a trial court abused its discretion. *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.). We must consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Arredondo*, 2012 WL 4829801, at \*8.

Katy argues generally that there was no evidence to support the injunctions.[7] She further asserts that there was no evidence of any imminent harm, she had abducted or threatened to abduct the children, she had ever interfered with Luc's possession of the children, or she had ever hidden the children from him. She maintains that the evidence indicates she always returned the children to Luc after her visitation periods were over, and she says that there was "only scant testimony" that she had spoken negatively to the children about Luc or the case.

The majority of Katy's arguments appear focused on discounting evidence regarding a risk of international abduction. As discussed above, the trial court specifically stated in its findings of fact that it did not "find that credible evidence has been presented indicating a potential risk of . . . international abduction."[8] However, the court went on to find that "certain injunctions and conditions regarding international travel are in the best interest of the children." In other words, the court clearly indicated that while there was insufficient evidence of a potential risk of international *abduction* by Katy, it was in the children's best interest for Luc to be in control of any international *travel* by the children. Evidence supporting this determination can be found in Luc's

---

[7] It is important to note that Katy does not offer any specific argument that the trial court lacked authority to impose these injunctions, assuming there was evidence to support the trial court's actions. *See generally Peck*, 172 S.W.3d at 35 (rejecting substantive challenge to trial court's authority to issue particular permanent injunction in child custody case). Katy's contentions under her second issue are limited to challenging the evidentiary support for the court's rulings.

[8] Similarly, the majority of Luc's arguments in his appellee's brief also focus on the risk of international abduction; however, Luc has not appealed the trial court's finding of fact that no credible evidence has been presented indicating a potential risk of international abduction.

testimony, the statements of mental health professionals who treated or evaluated Katy, and in audio records made of Katy at various times. This evidence could be interpreted as revealing Katy's irrational and threatening behavior and anger issues. It was undisputed at trial that Katy wanted to return to Hong Kong with the children. Luc testified regarding several troubling incidents, including once when Katy allegedly killed the family's pet bird. Luc also testified that it had been difficult to reach agreement with Katy on issues relating to the children. One psychiatrist described Katy as self-centered, narcissistic, and manipulative, and another psychiatrist used similar terms. In comparison, a psychologist who assessed Luc found him to be without personality disorder, mature, stable, fair-minded, calm, and responsible, with good boundaries, good knowledge of child development, and good management skills with the children.

Given this evidence, it would have been reasonable for the trial court to conclude that, quite apart from any risk of international abduction, it was in the best interest of the children to limit Katy's control over international travel with the children. A trial court may grant, deny, restrict, or limit any of a possessory conservator's rights, privileges, duties, and responsibilities with respect to the child as is necessary to protect the child's best interest. *See* Tex. Fam. Code § 153.072; *Elshafie v. Elshafie*, No. 13-10-00393-CV, 2011 WL 5843674, at *3 (Tex. App.—Corpus Christi Nov. 22, 2011, no pet.) (citing *Hopkins v. Hopkins*, 853 S.W.2d 134, 137 (Tex. App.—Corpus Christi 1993, no writ)). The evidence presented at trial supports the conclusion that prohibiting Katy from taking the children outside the United States or Texas without Luc's consent and prohibiting her from retaining or obtaining passports for the children appear to be reasonable restrictions of Katy's rights as a possessory conservator and in the best interest of the children.

But not all of the injunctions which the trial court imposed appear rationally related to Luc's control of international travel by the children. Neither do they appear to be reasonable restrictions on the possessory conservator's rights with respect to the children absent a finding of a potential risk of international abduction. The requirements that Katy provide to the State Department, as well as a foreign embassy or consulate,

8

notice of the court-ordered travel restrictions, a copy of the decree, and proof of her agreement to the restrictions,[9] as well as provide proof of receipt of each of these items back to the court, mirrors the "Abduction Prevention Measures" listed in section 153.503 of the Texas Family Code. They are designed to prevent international abduction, *i.e.*, a failure to return the children from overseas. They go beyond merely providing Luc with control over the children's international travel by involving both the United States and a foreign government. *Cf. Arredondo*, 2012 WL 4829801, at *11-12 (dissolving travel restriction on mother's personal travel without children because it was overly broad, unreasonably restrictive, and unrelated to the child's best interest). In this regard, the trial court imposed upon Katy a greater burden than the law allows. *Cf. In Re Cooper,* 333 S.W. 3d 656, 661 (Tex. App.—Dallas 2009, no pet.) (holding trial court abused its discretion in requiring mother to make "extreme efforts" to find employment within the preferred residency area). The trial court abused its discretion in granting these injunctions absent a finding of a potential risk of international abduction; there was no evidence in this case supporting these measures as being in the children's best interest outside of a risk of international abduction.[10] Consequently, we sustain Katy's second issue in part and modify the trial court's final decree to dissolve these requirements.

The trial court's orders that Katy cannot interfere with Luc's right of possession or hide or secrete the children from him, however, do not appear solely connected to a risk of international abduction. As Katy argues, Luc cites no evidence suggesting Katy has

---

[9] Luc does not point to any evidence in the record, and we have not found any, suggesting that Katy agreed to the travel restrictions.

[10] Courts frequently consider the following general factors in assessing the best interests of a child when they are applicable: (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present or future, (4) the parental abilities of the individuals involved, (5) the programs available to those individuals to promote the child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *Cooper*, 333 S.W. 3d at 660. None of these factors support the trial court's measures relating to the State Department or a foreign embassy or consulate in this case.

interfered with his possession or hidden the children from him in the past. However, as discussed above, there was considerable evidence that Katy was prone to erratic behavior and manipulation. This evidence was sufficient to support the trial court's orders on interference, hiding, and secreting; thus, the trial court did not abuse its discretion in issuing these orders. *See generally* Tex. Fam. Code § 153.072; *Elshafie*, 2011 WL 5843674, at *3.

Evidence was also presented to support the injunction barring Katy from discussing the custody case or related issues around the children. For example, a psychologist testified that certain comments attributed to Katy were those of "a parent who doesn't want to co-parent and a parent who wants to have the other parent look bad to the child." Katy acknowledges this evidence, although she refers to it as "scant testimony." Documentary evidence further indicated that Katy told one of the children that Luc had done "harmful things" to her and would not allow her to contact the child anymore. This evidence was sufficient to support the court's injunction to prevent discussion of the case around the children. As mentioned, Katy does not raise any substantive legal arguments regarding any of these injunctions.

### *Conclusion*

We sustain Katy's second issue in part. We modify the trial court's final decree to dissolve the requirements that Katy inform the State Department and a foreign consulate or embassy of the travel restrictions contained in the final decree and provide those institutions with a copy of the decree, as well as the requirement that she provide proof of receipt back to the trial court. As so modified, we affirm the final decree.


/s/         Martha Hill Jamison
                     Justice


Panel consists of Justices Boyce, Christopher, and Jamison (Christopher, J., concurring).

10