# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00361-CV

### T. L., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

#### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
#### NO. D-1-FM-13-002211, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a jury determined that appellant T.L.'s parental rights to O.F., her two-year-old daughter, should not be terminated, the trial court requested briefing and held a hearing on the issue of conservatorship. Following that hearing, the trial court signed a decree finding that the Texas Department of Family and Protective Services should be named as O.F.'s primary managing conservator (PMC) and that T.L. should be named possessory conservator with supervised visitation.[1] T.L. appeals, arguing that the Department waived its argument that it should be appointed PMC and that the evidence presented did not overcome the presumption that T.L., as parent, should be named PMC. We affirm the trial court's decree.

---

[1] The parental rights of B.F., O.F.'s father and T.L.'s fiancé, were terminated. B.F. did not appear for trial. His attorney stated at trial that he believed B.F. was no longer living in Texas and that B.F. had only participated in the case via one telephone call at a permanency conference and one telephone call with O.F.'s child advocate specialist. B.F. never filed an admission of or counterclaim for paternity and has not appealed from the termination of his rights.

**Factual and Procedural Background**

The Department first became involved with T.L. and her children in mid- 2011, about seven months before O.F. was born, when it received several referrals alleging domestic violence between T.L. and B.F. and abuse and neglect of T.L.'s four-month-old son, B.L., and almost-four-year-old daughter, S.B. In its affidavit in support of its petition for conservatorship, the Department alleged that after the reported incident of domestic violence, T.L. claimed it had not happened and said she loved B.F. and could not pay her rent without him. The Department also received a report that there was no food or formula in the house, that the children did not have beds, that the residence was filthy and infested with roaches, and that T.L. did not change B.L.'s diaper often enough. T.L. was alleged to have beaten S.B., who had been living with her father, with a shoe and to be using and selling crack cocaine from her residence, and there were several allegations that S.B.'s father had also physically abused her. S.B. was reported to have had several black eyes and other visible injuries. The Department was named B.L.'s managing conservator in June 2011, and S.B. was placed in the Department's care in November 2011.

In January 2012, four days after O.F. was born, the Department filed an amended petition, including O.F. in its petition and seeking temporary conservatorship of the infant. The Department acknowledged that T.L. had been participating in regular visitation with S.B. and B.L. and had started anger management and therapeutic services. However, her cooperation with the Department and visitation with her older children did not start until November 2011, two months earlier, and T.L. had yet to begin several other required services, including a psychological evaluation, individual counseling, domestic violence education, and parenting classes. The Department stated

2

that it wanted T.L. and B.F. to participate in court-ordered services "to reduce the reasonable likelihood that [O.F.] may be abused or neglected in the immediate or foreseeable future."

Although the Department pled to be named O.F.'s temporary managing conservator in its amended petitions, O.F. remained in her mother's care until she was almost a year old. In November 2012, after a failed attempt to return S.B. and B.L. to T.L.'s care, all three children were removed and placed in foster homes, with the Department still indicating that family reunification was its goal, and the Department was named as O.F.'s temporary managing conservator. In April 2013, T.L.'s parental rights to B.L. and S.B. were terminated, the proceeding related to O.F. was severed into a separate cause number, and the Department changed its permanency plan for O.F. from family reunification to termination and adoption.

At trial in April 2014, the Department alleged as grounds for termination the following: that T.L. had engaged in conduct or placed O.F. with someone engaged in conduct that endangered O.F.'s well-being; that she placed O.F. or allowed her to remain in conditions that endangered her well-being; that she constructively abandoned O.F.; and that she did not comply with a court order that resulted from the child's removal due to abuse or neglect and that established the actions necessary to regain custody. *See* Tex. Fam. Code § 161.001(1)(D), (E), (N), (O). The jury returned a verdict finding that T.L.'s rights should not be terminated. It was not asked any questions relating to conservatorship. The trial court then asked the attorneys when a judgment would be prepared, and the Department moved to be named O.F.'s PMC. The trial court asked for briefing on the issue, stating:

3

And even though we didn't submit a question, which is interesting to me, about PMC—you'll need to think about that, why no one asked the jury if you don't answer yes to these questions, should we then appoint the department as PMC, should we appoint mom as possessory conservator. . . . I've had other charges where we asked layers of questions. For whatever reason, everyone elected not to do that in this case. And I think there are, I'm sure, sound reasons and sometimes strategic reasons why you choose to do what you do, but now you're asking me to do something that the jury was not asked to do.

About two weeks after the jury trial, the parties submitted their briefs, and the trial court held a hearing to discuss whether the Department could seek to be named PMC after not having submitted the issue to the jury. When asked why the Department had not requested a jury question about conservatorship, counsel stated, "[W]e just thought that the Court had the authority to do it if—by looking at the statutes." The trial court noted that T.L. had also opted not to ask such questions, and T.L.'s attorney answered that T.L. had told her, "I either want my child with no rights terminated or I don't have my child and I'm out of the picture." T.L.'s attorney said she had proceeded "thinking that it was going to be an all or nothing, that the [D]epartment would be dismissed if mother's rights were intact or she would be completely out of the picture."

The trial court stated that, although there was an argument to be made that the Department had waived the issue, so was there an argument that T.L. had waived her complaint "because it is common for courts to decide this question after a jury verdict on termination." The court concluded that the Department's request for PMC "was in the pleadings in the alternative" and, thus, that the issue was fairly before the court. The court stated that O.F. had bonded to her foster mother and that an immediate return would be "so disruptive and so disorienting . . . that it runs the risk of great damage to her." The court lauded T.L. for recognizing that O.F. had bonded with her

4

foster mother and for being "kind of receptive to a relationship" with the foster mother. The court decided that it was not in O.F.'s best interest to be returned to T.L. at that time and named the Department PMC, giving T.L. possessory conservatorship and supervised visitation.

## Waiver of Right to Seek PMC

T.L. argues in three issues that the Department should not have been allowed to ask to be named PMC because (1) it waived the issue by not seeking to ask the jury any questions related to conservatorship; (2) it "repeatedly informed" the jury that, should the jury decide not to terminate T.L.'s rights, the child would go home to her; and (3) it only pled for conservatorship under section 153.005 of the family code, not sections 153.131 and 263.404, and thus waived the right to seek conservatorship. The Department responds that the court had statutory authority under section 161.205 of the family code to appoint the Department as sole managing conservator, that the jury's verdict was given full effect by the court's conservatorship decision, and that the Department's pleadings gave T.L. fair notice that it would seek managing conservatorship in the event that her parental rights were not terminated.

The Department's petition stated that, if T.L.'s parental rights were not terminated, the court should appoint the Department as O.F.'s managing conservator "as provided in [section] 153.005, Texas Family Code." Section 153.005 provides that a trial court must appoint at least one managing conservator if the parents are separated, as is the case here. *Id.* § 153.005(a). We agree with the Department that its pleading, referring to the court's duty to name a managing conservator and asking that the Department be so appointed, was sufficient to give T.L. notice of its intent to seek PMC in the event that the jury decided not to terminate her rights. *See Evans v.*

5

*Tarrant Cnty. Child Welfare Unit*, 550 S.W.2d 144, 145 (Tex. Civ. App.—Fort Worth 1977, no writ) ("We find the refusal to terminate not to be a dismissal of the case, as contended by mother, particularly in view of the alternate pleading of Welfare."). The fact that the Department did not reference sections 153.131 or 263.404 did not waive the Department's ability to seek to be named PMC.[2]

Further, section 161.205 provides that if a trial court does not order the termination of a parent's rights, it shall either deny the Department's petition or "render any order in the best interest of the child." Tex. Fam. Code § 161.205. And, section 153.002 states that the child's best interest "shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id*. § 153.002. We hold that the trial court had statutory authority under the applicable family code provisions, when read as a consistent and logical whole, to determine that T.L. was not at the time of trial an appropriate PMC and to name the Department as PMC instead. To hold otherwise, particularly when, as the trial court noted, T.L. herself opted not to seek the jury's answer about conservatorship, would put O.F.'s best interest subservient to technicalities of the rules governing pleadings and waiver. This would violate section

---

[2] Section 153.131 provides (1) that a parent shall be appointed managing conservator unless the trial court finds that such an appointment is not in the child's best interest and (2) that there is a rebuttable presumption that it is in a child's best interest for the parent to be appointed managing conservator. Tex. Fam. Code § 153.131. Section 263.404 provides that a trial court may render a final order that does not terminate a parent's rights but appoints the Department managing conservator if the court finds (1) that appointment of a parent would significantly impair the child's health or development and (2) that it is not in the child's best interest to appoint a relative or "another person" as managing conservator. *Id*. § 263.404(a). T.L. does not explain why it was necessary for the Department to reference sections 153.131 and 263.404 other than to state that the issue was not tried by consent and that the Department "was required to plead accordingly."

153.002, which is the overarching consideration in all matters related to conservatorship and possession. *See In re J.D.H.*, 661 S.W.2d 744, 748 (Tex. App.—Beaumont 1983, no writ) (termination case in which court of appeals stated that "technical rules of civil procedure, as to practice and pleading, are not of controlling importance, since the controlling factor is the best interests of the child"); *Evans*, 550 S.W.2d at 145 ("'The technical rules of civil procedure cannot apply with equal force in a child custody case as in other civil cases, because the sole determining factor in a child custody case must be the best interests of the child.'" (quoting *Erwin v. Erwin*, 505 S.W.2d 370, 372 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ))); *see also Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance.").

As for T.L.'s argument that the trial court's conservatorship determination did violence to the jury's verdict, we disagree. It is true that the Department stated in its argument that "this is the environment that [O.F.] would be going home to if you do not terminate [T.L.]'s rights" and that neither the Department nor O.F.'s attorney ad litem discussed the possibility that the Department would be named PMC if the jury did not terminate T.L.'s rights. However, as we noted before, T.L. also decided not to seek the jury's answer on conservatorship or to object to the jury charge, and her attorney stated at the hearing to enter judgment that T.L. did not want to continue to be involved with the Department in any way. And, we fail to see how the jury's verdict was affected by the Department's argument. Logically, if the Department had instead stated that it would seek PMC as an alternative to termination, the jury would still have made the same decision, opting not to terminate T.L.'s rights. In other words, T.L. was not harmed by the Department's argument.

7

The Department pleaded that it was seeking conservatorship as an alternative to termination. T.L. did not seek the jury's answer about conservatorship, preferring, as the Department notes, to obtain "all or nothing." The trial court was required to place O.F.'s best interest before all other considerations in this case, and, after the jury decided T.L.'s rights should not be terminated, to render an order in O.F.'s best interest and to appoint a PMC. We overrule T.L.'s issues related to waiver and whether the trial court's conservatorship decision somehow countermanded the jury's verdict.

**Sufficiency of the Evidence Supporting Conservatorship Decision**

We next consider T.L.'s argument that insufficient evidence supports the trial court's conservatorship decision. There is a rebuttable presumption that it is in a child's best interest for her parent to be appointed managing conservator. Tex. Fam. Code § 153.131(b). However, the level of proof necessary to support a trial court's conservatorship decision is far different than the level to terminate a parent's rights to her child. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Unlike the clear-and-convincing standard used in termination decisions, a court's decision related to conservatorship is governed by a preponderance-of-the-evidence standard, is "subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *Id.*

The trial court, along with the jury, heard evidence that in 2010, T.L. was arrested for attempting to pass fraudulent checks, was found to be in possession of marihuana, hydrocodone, and promethazine, and was believed to have filled fraudulent prescriptions. In 2011, B.F. was arrested for alleged domestic violence, and T.L. later insisted that B.F. had not abused her. Shortly after that incident, the Department was informed that T.L. did not have enough food or clothing for S.B. and

8

B.L. In October 2012 and December 2012, while she was pregnant with O.F. and during the time the case involving her older children was pending, T.L. tested positive for marihuana, cocaine, and methamphetamine. T.L. was repeatedly uncooperative with the Department during the pendency of this case, refusing to provide her address or to contact the Department when required. She again tested positive for marihuana use in September 2013. T.L. was diagnosed with bipolar and narcissistic personality disorders and borderline intellectual functioning and at least once expressed that she was having suicidal thoughts.

In T.L.'s favor, there was evidence that she had completed anger management and protective parenting courses; she was successfully discharged from therapy in October 2012; she was compliant with the conditions of her probation and successfully discharged from probation in December 2012; she had visitations with O.F. starting in November 2013; she was cooperative with law enforcement, doctors, and CASA volunteers; and she was observed by her probation officer, her therapist, and a psychologist to be bonded and appropriate with and attentive to her children.

Most important, there was evidence that O.F. was closely bonded to her foster parents and to her brother, who had been adopted by the same foster parents one month before trial. O.F. was placed in her foster home in November 2012, when she was about nine months old, and Department witnesses testified that O.F. was comfortable, happy, and thriving in the home. T.L.'s therapist agreed that it would be detrimental to O.F.'s emotional health and stability to remove her from her foster home and place her with T.L.[3] O.F.'s foster mother testified that O.F. had bonded

_____

[3] The therapist said his answer was premised on the following facts: that O.F. had been living in the same home since she was nine months old, that the home was healthy and stable, that she had been well taken care of, and that T.L. had visited at most four times in the last year. All of those facts were supported by the evidence.

with both her and her husband. Her foster mother thought it would be "devastating" for O.F. to be taken away from her brother.

Based on this record, despite the parental presumption in T.L.'s favor, we cannot hold that the trial court abused its discretion in deciding that it was not in O.F.'s best interest to be returned to T.L.'s care at the time the trial concluded. *See id.*; *see also Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (providing non-exhaustive list of factors to consider when evaluating best interest: child's wishes, emotional and physical needs of child, emotional and physical danger to child, parenting abilities of individuals seeking custody, programs available to assist those individuals, competing plans for child, stability of home, parent's actions shedding light on parent-child relationship, any excuses for parent's actions). Nor is the court's decision contrary to the preponderance of the evidence. We overrule T.L.'s fourth issue on appeal.

## Conclusion

Having overruled T.L.'s complaints on appeal, we affirm the trial court's decree.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: November 26, 2014

10