

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00018-CV

_____

IN THE MATTER OF THE MARRIAGE OF
JENNIFER JO KEYS AND SCOTT T. KEYS
AND IN THE INTEREST OF B.D.K., A CHILD

On Appeal from the 274th District Court
Comal County, Texas
Trial Court No. C2017-2188C

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Jennifer Jo Keys petitioned for divorce from Scott T. Keys. They settled all claims related to the divorce except for the issue of whether and to what extent their seven-year-old child, B.K., would be allowed to associate with the people they were dating. After the trial court entered a permanent injunction preventing Scott from allowing any contact between B.K. and Scott's girlfriend, Scott appealed.[1]

Scott argues that the trial court erred in granting the injunction because it was unsupported by proper pleadings or any properly admitted evidence. We find that the permanent injunction was properly before the court despite the lack of a technical pleading to support it, that the trial court did not err in its evidentiary rulings, and that the permanent injunction was supported by sufficient evidence. As a result, we affirm the trial court's judgment.

## I.     Factual and Procedural Background

Scott's first argument concerns the pleadings in this case. Jennifer's fill-in-the-blank petition for divorce did not include a request for injunctive relief. In response to her petition, Scott filed a counterpetition for divorce that prayed for a temporary injunction to enjoin Jennifer from "[p]ermitting an unrelated adult with whom [Jennifer] ha[d] an intimate or dating relationship to remain in the same residence with the child between the hours of anytime P.M. and anytime A.M." In her amended petition, Jennifer requested that the trial court issue a similar temporary order prohibiting "an unrelated adult with whom [Scott] ha[d] an intimate or dating relationship [from]

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

remain[ing] in the same residence with the child between the hours of 10:00 P.M. and 8:00 A.M." None of Jennifer's pleadings requested the permanent injunction issued by the trial court.

However, Jennifer and Scott agreed on temporary orders that provided, "No party shall permit an unrelated adult with whom the party is in a romantic relationship to spend the night in the same home as the child." This is a morality clause. *See Matusek v. Twine*, No. 03-18-00064-CV, 2019 WL 3137423, at *2 (Tex. App.—Austin July 16, 2019, no pet.) (mem. op.). The agreed temporary order also provided that Scott's girlfriend, "Jennifer Santoro Harrison[,] shall not be permitted around the child during possession." This agreed temporary order was signed by all parties, their counsel, and the trial judge.

As a result of a mediated settlement agreement (MSA), Jennifer and Scott settled every aspect of their divorce, with one exception. The MSA said, "The current injunction in temporary orders regarding . . . Harrison and [Jennifer's boyfriend,] Jack Grimes[,] shall remain in effect until the court decides whether or not to continue said injunction." The trial court heard those remaining contested issues. The parties disputed the nature of that hearing.

At the hearing, Scott's counsel stated that Jennifer "would like a permanent injunction - - permanent morality clause." He continued, "We didn't agree to that, so she said she wanted to litigate it." Without hearing any evidence, the trial court granted the "injunction" on Jennifer's counsel's statement that she could not serve Harrison with notice of the hearing. The court stated, "Injunction is granted. If you can't - - if you're having that much difficulty finding [Harrison] and they are still dating her then the injunction is granted." The trial court clarified that it had granted a "permanent morality clause" and, when asked on what grounds, stated it was "[b]ased on the fact

3

that she's been unable to testify." When Scott's counsel argued that there was no evidence to support the permanent injunction, the court said, "[T]hat's not an injunction[,] it is a moral clause," but then heard evidence from the process server, Jennifer, and Jennifer's daughter from another marriage, K.G.

Russell Fisher, a process server, testified that he attempted to serve Harrison six different times, twice at her place of work, twice at her apartment, and twice at Scott's residence. Fisher's notes showed that he attempted service on four days within the same week. He admitted that he did not attempt to call Harrison because he did not have her number, did not see anyone in her apartment, and, although he was aware of which vehicle she drove, did not see her vehicle during the times he attempted service. Yet, he believed employees at the dental office where she worked were secreting her because the person that he spoke with there said "very sarcastically" that she was not sure when Harrison would return.

Over objection that fifteen-year-old K.G. was not disclosed as a witness during discovery and the substance of her testimony was never revealed, K.G. testified that Harrison had contacted her on Instagram. K.G. testified that Harrison made negative comments about Jennifer. When Jennifer introduced screenshots from her cell phone purporting to be an Instagram discussion between Jennifer, Harrison, and K.G., Scott objected that the document was hearsay and did not contain Harrison's name "or any other identifying marks other than some screen name that [had not] been authenticated or proved up." The trial court allowed the screenshots into evidence after finding them admissible by reasoning that Harrison was unavailable under Rule 804(a)(5) of the Texas Rules of Evidence. *See* TEX. R. EVID. 804(a)(5).

4

The comments complained of were made by a person using Instagram username "texas.rda." Aside from testimony that Harrison made negative comments on Instagram, no one testified or established that "texas.rda" was Harrison's Instagram username. The first comment from "texas.rda" to Jennifer's purported Instagram username referenced an earlier comment, possibly made by Jennifer, and said, "I'll take being a whore any day over being a drunk hypocrite . . . . But here is how we are different pop-tart: I'm not a self-centered abusive mother who chooses men, liquor, and bars over my kid. . . . you abandoned [your husband] and your kids for the bar scene." "Texas.rda" then asked Jennifer if she knew where K.G. was. This prompted K.G. to respond that her "amazing mother" knew where she was. "Texas.rda" responded, "I would have to argue with you on the 'amazing' part sweetie. . . . Amazing mothers don't pawn their kids off with school friends for an entire summer so they can shack up with the flavor of the month shooting guns and getting drunk." In response to K.G.'s several responses to this comment, "texas.rda" concluded by saying, "I understand your anger and need to lash out. If my mom always dumped me off in favor of the cute, blonde-haired, blue-eyed daughter instead of me I would act out too."

Jennifer was the last witness to testify at the hearing. When she was asked whether she was seeking a permanent injunction preventing Harrison's contact with B.K., the trial court reminded her, "I'm only considering a morality clause."

Jennifer testified that Harrison had contacted her through email, text, and Instagram about her affair with Scott. While Jennifer initially claimed Harrison had a criminal history for forging prescriptions, she later admitted she had no evidence of any criminal history. Jennifer claimed that she derived her speculation of a criminal history from information on Louisiana and Tennessee

5

dental board websites documenting "[Harrison's] ex-husband losing his dental license because [Harrison] was practicing . . . as a dental assistant and not being licensed as well as writing prescriptions regarding both of those." The evidence established that Harrison was currently working in a Texas dental office. Jennifer also claimed that Harrison posted nude photos of herself online, had a child she "gave up," and "decided to raise" another child. Over overruled hearsay and authentication objections, Jennifer also claimed Harrison had social media posts related to marihuana and alcohol, saying, "[S]o I'm a pot head." Jennifer then testified, without objection, that she confronted Scott and said, "['S]o she smokes weed[?'] and his response was ['S]o what[,] she does['] - - or [']I'm sure she does.[']"

When asked about Harrison's relationship with B.K., Jennifer admitted that Harrison got along well with B.K., that she sent a message to Harrison thanking her for treating B.K. well, and that she had no evidence to suggest that Harrison had harmed B.K. Jennifer also testified that she knew of no Child Protective Services actions against Harrison. Scott introduced recent photos of Harrison and B.K., both of whom "were smiling."[2]

After the trial court granted the "morality clause," Scott filed a motion for rehearing when Jennifer insisted that the court had granted a permanent no-contact order at the prior hearing. The trial court granted the motion, and the hearing produced the following transcript documenting the confusion:

> [BY SCOTT'S COUNSEL]: No, Your Honor. A no contact order means permanent no contact at all with a child.

---

[2]According to Jennifer, these photos were posted on the day Harrison was served with the temporary injunction. There is no evidence as to when the photos were taken.

THE COURT: If I grant an order it's permanent until I change it. . . . [T]his is the first time in the 15 years I've been on the bench . . . where I have had the discussion about the distinction, if there is one, between a morality clause and an injunction against - - with no contact. The only - - I was - - I thought I was specific in terms of - - I'm thinking - - it's no - - no unrelated adults shall be with the child while that parent is in possession with them, whether that's an injunction or whether that's a morality clause. I don't know that it makes a significant difference what you call it.

[BY SCOTT'S COUNSEL]: You mean overnights or ever? That wouldn't make sense if it was ever.

THE COURT: No, it happens ever. Usually, it's no unrelated adults shall be with the parent who has possession of the child.

[BY SCOTT'S COUNSEL]: What about a teacher or coach?

THE COURT: Overnights.

[BY SCOTT'S COUNSEL]: Overnights? That's what we're arguing about
. . . .
[Jennifer] is asking for more than a morality clause. She's asking for a permanent no contact order at no time, no matter what.

The trial court stated:

It's clear to me that there was an effort on someone's part - - and I'm not going to put it on you - - that for her not to make herself available. Now, if you want to have her - - let me finish. If she's such a key witness and she's such a good person, then she needs to be up here and prepared to testify. You chose not to call her, too. I can take - - I can take notice of that and I did. The fact that your client chose not to call her as a witness. If she's so wonderful and she's such a great person and she has only the best interest of the child at heart, then she could have - - she was more than welcome to come up here and testify that day. Nobody prohibited her from doing that. Nobody denied her that opportunity. That was a choice that was made.
. . . . Here's what I'm going to do. I think this is in the interest of justice. I'm going to grant the injunction.
. . . . [T]he issue on Ms. Harrison was whether she should be around the child during possession. I've said no, period.

7

After reciting that all of the trial court's orders related to B.K. were made in her best interests, the trial court's final judgment set forth both the morality clause and the injunction, as follows:

> Morality Clause - The Court Orders that no unrelated person of the opposite sex with whom the parent is involved in an intimate relationship shall spend the night when the child is in the parent's care.
>
> Permanent Injunction - The Court finds that a permanent] [sic] injunction against SCOTT THOMAS KEYS should be granted as appropriate relief because there is no adequate remedy at law.
>
> The permanent injunction granted below shall be effective immediately and shall be binding on SCOTT THOMAS KEYS; on his agents, servants, employees, and attorneys; and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise. . . .
>
> IT IS ORDERED that SCOTT THOMAS KEYS is permanently enjoined from: Allowing the child of this suit to have any contact with JENNIFER SANTORA a/k/a JENNIFER HARRISON.

Scott's requests for findings of fact and conclusions of law and notice of past due filings yielded no result.

## II. The Injunction Issue Was Properly Before the Court

In his first point of error, Scott argues that the trial court erred in granting the injunction because it was unsupported by Jennifer's pleadings. We disagree.

"The court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child." TEX. FAM. CODE ANN. § 153.072; *see* TEX. FAM. CODE ANN. § 153.003. However, "[t]he terms of an order that . . . imposes restrictions or limitations on a parent's right to possession of or access to a child may not

8

exceed those that are required to protect the best interest of the child." TEX. FAM. CODE ANN. § 153.193.

Yet, because injunctions in family law cases are determined by the best interests of the child, "courts have overlooked technical rules of pleading and practice and found that fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of a child." *Philipp v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00418-CV, 2012 WL 1149291, at *5 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.); *see In re I.M.M.*, No. 01-17-00415-CV, 2019 WL 1768998, at *8 (Tex. App.—Houston [1st Dist.] Apr. 23, 2019, pet. denied) (mem. op.); *In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *6 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.); *King v. Lyons*, 457 S.W.3d 122, 129–30 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance."); *MacCallum v. MacCallum*, 801 S.W.2d 579, 586 (Tex. App.—Corpus Christi 1990, writ denied) ("Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings."). Moreover, "[o]nce the child is brought under [the court's] jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence." *Philipp*, 2012 WL 1149291, at *9 (quoting *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)).

9

In addition, in this case, the agreed temporary orders and course of the mediation provided Scott with sufficient notice that the injunction issue would require resolution from the trial court. *See I.M.M.*, 2019 WL 1768998, at *8 (citing *In re A.D.*, 474 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). Because possession of and access to B.K. were at issue, Jennifer's request for injunctive relief was before the court even though it was not included in her original or amended petition. We overrule Scott's first point of error.

## III.    The Trial Court Did Not Err in Its Evidentiary Rulings

### A.    Standard of Review

We "review a trial court's evidentiary rulings for abuse of discretion." *V.A.C. v. J.L.W.*, No. 03-18-00202-CV, 2018 WL 4100798, at *5 (Tex. App.—Austin Aug. 28, 2018, pet. denied) (mem. op.) (citing *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727–28 (Tex. 2016)). "The 'test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles.'" *Id.* (quoting *ICON Benefit Adm'rs II, L.P. v. Abbott*, 409 S.W.3d 897, 906 (Tex. App.—Austin 2013, pet. denied) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). "An appellate court 'must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling'. . . and 'will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment.'" *Id.* (quoting *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

**B.** **The Trial Court Did Not Err in Allowing K.G.'s Testimony**

Scott served Jennifer with requests for disclosure, interrogatories, and requests for production. When K.G. was called as a witness, Scott objected on the ground that the child was not disclosed as a witness. Jennifer admits that K.G. was never disclosed as a witness before the hearing. At the August 30 hearing, Jennifer simply informed the trial court that "[K.G.] was contacted after the last hearing," which took place on August 22, as a result of Harrison's messages to K.G. When Scott argued that Jennifer should have supplemented her discovery responses, the trial court overruled the objection by saying, "Under the circumstances[,] I'm going to allow it." On appeal, Scott argues that the trial court erred in permitting K.G.'s testimony.

In response to a request for disclosure under Rule 194.2 of the Texas Rules of Civil Procedure, a party must disclose "the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case." TEX. R. CIV. P. 194.2(e). Under Rule 193.6,

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1)     there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> >
> > (2)     the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). "The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of

11

good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record." TEX. R. CIV. P. 193.6(b). Evidence not properly disclosed under Rule 193.6 cannot be admitted simply in the interest of justice or to allow full presentation of the merits. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992).

The purpose of this Rule "is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." *Id.* (citing the former TEX. R. CIV. P. 215(5)). The Rule "is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition." *Id.* "The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances." *Id.* "The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause." *Id.*

Here, the record shows only that Harrison reached out to K.G. over Instagram after the August 22 hearing and that Jennifer's counsel contacted K.G. then. Jennifer's brief argues, "Since the Instagrams were sent . . . the week before the August 30 hearing[,] . . . there was good cause for failing to supplement the discovery response." Because it appears that Jennifer's counsel had knowledge that K.G. would be a witness on August 22, Scott argues there was no good cause for failing to supplement her discovery responses by August 30. *See In re D.W.G.K.*, 558 S.W.3d 671, 683 (Tex. App.—Texarkana 2018, pet. denied); *Alvarado*, 830 S.W.2d at 916 (finding there was no good cause for failing to supplement discovery responses when counsel knew a witness would be called six days before trial).

12

Additionally, Jennifer does not contest Scott's argument that he was unfairly surprised and prejudiced by the untimely disclosure, and the record suggests that he was unaware that K.G. would be called as a witness since she was not listed as a person with knowledge of relevant facts. On this record, Scott believes he was forced into trial by ambush.

There is a split between our Court and the Austin Court of Appeals on this issue. *Compare D.W.K.G.*, 558 S.W.3d at 687 *with R. H. v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-00-00018-CV, 2001 WL 491119, at *8 (Tex. App.—Austin May 10, 2001, pet. denied) (mem. op.). In *R.H.*, the Austin Court of Appeals reversed the trial court's exclusion of two witnesses for failure to disclose those witnesses as persons with knowledge of relevant facts before trial. *R.H.*, 2001 WL 491119, at *8. The Austin court reiterated that "[c]ompared to the best interest of the child, technical rules of pleading and practice are of little importance in determining child custody issues" and wrote that, "[r]egardless of whether the Department suffered unfair surprise or whether appellant had good cause for the delay, the court should have admitted the testimony because the best interest of children was at stake." *Id.* Applying the precedent of the Austin Court of Appeals, we conclude that the trial court did not abuse its discretion in finding that there was good cause to admit K.G.'s testimony and, therefore, did not err in allowing it.

C.      **The Trial Court Did Not Err in Overruling Scott's Hearsay Objection**

Scott also argues that the trial court erred in overruling his hearsay objection after determining that Harrison was unavailable. "Hearsay is an out-of-court statement that 'a party offers in evidence to prove the truth of the matter asserted in the statement.'" *Austin v. Austin*, No. 03-18-00678-CV, 2019 WL 4309569, at *3 (Tex. App.—Austin Sept. 12, 2019, no pet. h.)

13

(mem. op.) (quoting TEX. R. EVID. 801(d)). "Hearsay is inadmissible except as provided by statute or rule." *Id*. (citing TEX. R. EVID. 802). "However, '[o]ut-of-court statements are not hearsay if offered for a purpose other than to prove the truth of the matter asserted.'" *Id*. (alteration in original) (quoting *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992)).

The statements made by "texas.rda," that Jennifer was a "drunk hypocrite" and "a self-centered abusive mother who [chose] men, liquor, and bars over [her] kid"; had "abandoned [her husband] and . . . kids for the bar scene"; "pawn[ed] [her] kids off with school friends for an entire summer so [she] c[ould] shack up with the flavor of the month shooting guns and getting drunk"; "dumped [K.G.] off in favor of the cute, blonde-haired, blue-eyed daughter"; and was not an amazing mother, were not offered by Jennifer to prove the truth of the matter asserted—that Jennifer was a bad mother. Instead, the statements were offered to show the types of communications Harrison made to K.G. Because Jennifer offered the statements for a purpose other than proving the truth of the matter asserted in the statements, they were not hearsay. *See id.* at *3. Therefore, the trial court did not err in overruling Scott's hearsay objection.[3]

## IV. Sufficient Evidence Supported the Trial Court's Permanent Injunction

### A. Standard of Review

Next, Scott argues that the traditional requirements for a permanent injunction—(1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the lack of an adequate remedy at

---

[3] Although Scott argued that the screenshots from K.G.'s cell phone were not properly authenticated, he has failed to properly brief that issue on appeal. *See McKinnon v. Wallin*, No. 03-17-00592-CV, 2018 WL 3849399, at *2 (Tex. App.—Austin Aug. 14, 2018, pet. denied) (mem. op.) (quoting TEX. R. APP. P. 38.1(i) in reiterating that adequate briefing requires "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

law—were not met. However, "these traditional requirements are not strictly applicable in the child custody context; rather, courts routinely grant permanent injunctions in such cases consistent with the best interests of the child[]." *Messier*, 389 S.W.3d at 908 (citing *In re B.J.W.S.*, No. 14-08-01154-CV, 2010 WL 4396291, at *9 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.); *see Peck v. Peck*, 172 S.W.3d 26, 35–36 (Tex. App.—Dallas 2005, pet. denied) (finding no abuse of discretion in granting a permanent injunction in custody case where traditional requirements were not met and noting "where the family code does speak specifically to injunctive relief (i.e., in temporary orders), it specifically dispenses with the requirement of establishing such prerequisites")); *but see In re A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215, at *1 (Tex. App.—Fort Worth July 31, 2014, no pet.) (mem. op.) (per curiam).

Instead, we review a trial court's finding that a permanent injunction is in the best interests of the child for an abuse of discretion. *Phillip*, 2012 WL 1149291, at *7; *Messier*, 389 S.W.3d at 908 (citing *Arredondo v. Betancourt*, 383 S.W.3d 730, 740 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). "[W]e will reverse a trial court's determination only if it acts unreasonably, arbitrarily, or without reference to guiding principles." *Phillip*, 2012 WL 1149291, at *7 (citing *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982))). "We will not reverse merely because we disagree with the trial court's decision." *Id*. "When we consider whether a trial court abused its discretion, we do not view the legal and factual sufficiency of the evidence as independent grounds of error but as factors relevant to our assessment." *Id.* (citing *Ditraglia v. Romano*, 33 S.W.3d 886, 889 (Tex. App.—Austin 2000, no pet.); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin

15

1997, no pet.)). "Because the trial court is best situated to observe witnesses' demeanor and other factors that cannot be discerned from an appellate record, we will generally defer to the court's decision so long as it is supported by substantive and probative evidence." *Id.*

### B.      The Injunction Was Within the Trial Court's Discretion

Finally, Scott argues that there is insufficient evidence for the trial court to have granted a permanent injunction. As noted above, sufficiency of the evidence is not an independent ground for relief in this case. *Id.* (citing *Ditraglia*, 33 S.W.3d at 889). Rather, it is merely one factor relevant to the issue of whether the trial court abused its discretion in granting the permanent injunction. *Id*.

At trial, K.G. testified that Harrison made negative comments about Jennifer, and the screenshots admitted into evidence showed the substance of these disparaging comments. The trial court could have found that those comments promoted parental alienation. Based on Harrison's conduct with fifteen-year-old K.G., the trial could have concluded that B.K. would be in danger of exposure to similar comments by Harrison against Jennifer if she were allowed contact with Harrison. Moreover, Jennifer testified that she had confronted Scott about Harrison's posts related to drugs and that Scott indicated that he was aware of Harrison's drug use. Scott did not object to that testimony.

Based on the evidence presented, the trial court could have concluded there was a danger that Harrison would promote parental alienation, that Harrison had used illegal drugs in the past, that Scott knew about Harrison's drug use, and that he was not opposed to it. In light of this testimony, and having observed the parties' demeanor at the hearing, the trial court could have

16

concluded that it was not in B.K.'s interests to permit Scott to allow contact with Harrison. Consequently, viewing the evidence under the deferential standard applicable to a best-interest determination, we are compelled to find that the trial court did not abuse its discretion in issuing the permanent injunction.

## V.      Conclusion

For all of the foregoing reasons, we overrule Scott's points of error and affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:      September 18, 2019
Date Decided:         October 3, 2019

17