337 S.W.3d 510 (2011)
In the Interest of W.C.B., A Child.
No. 05-09-01393-CV.
Court of Appeals of Texas, Dallas.
April 19, 2011.
*512 Ronald W. Uselton, Sherman, for Appellant.
Sheila Renee Shea, Jason L. Butscher, Butscher & Dunn, Sherman, for Appellee.
Before Justices FITZGERALD, LANG-MIERS, and FILLMORE.

OPINION
Opinion By Justice LANG-MIERS.
R.C. (Mother) appeals from an order modifying the parent-child relationship and appointing M.B. (Father) joint managing conservator with the exclusive right to designate the primary residence of the child. We affirm the trial court's order.

BACKGROUND
Mother and Father were divorced in 2007; Mother was given the exclusive right to designate the primary residence of W.C.B., their son who was two years old at the time. The final decree of divorce contained a residency restriction to Grayson and its adjacent counties. If Mother wanted to move from that area, the decree required Father's agreement or a court order. Mother and W.C.B. moved to Illinois in January 2009. She did not have Father's agreement or a court order. Father filed a petition to modify the parent-child relationship in which he asked the court to appoint him joint managing conservator with the exclusive right to designate the child's primary residence.[1] After a hearing, the trial court granted Father's petition and appointed him joint managing conservator with the exclusive right to designate the child's primary residence. Mother requested findings of fact and conclusions of law, but when the trial court failed to make them, Mother did not file a notice of past due *513 findings and conclusions.[2] Mother filed a motion for new trial alleging the evidence was legally and factually insufficient to support the trial court's order on the petition to modify and asserting she had a meritorious defense. After a hearing, the court denied the motion for new trial.[3] Mother appeals.
In her sole issue on appeal, Mother argues that the trial court abused its discretion by modifying the divorce decree to appoint Father as "primary conservator" of the child.

STANDARD OF REVIEW
We review a trial court's order on a petition to modify conservatorship for an abuse of discretion. In re B.M., 228 S.W.3d 462, 464 (Tex.App.-Dallas 2007, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably or without reference to guiding principles. See In re A.B.P., 291 S.W.3d 91, 95 (Tex. App.-Dallas 2009, no pet.). In family law cases, the abuse of discretion standard of review overlaps with traditional sufficiency standards of review. Id. As a result, legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion. Id. To determine whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether it erred in its exercise of that discretion. Id.
When, as here, findings of fact are neither properly requested nor filed, we imply all necessary findings of fact to support the trial court's order. Waltenburg v. Waltenburg, 270 S.W.3d 308, 312 (Tex.App.-Dallas 2008, no pet.). However, when the appellate record includes the reporter's record, the trial court's implied findings may be challenged for legal and factual sufficiency. Brock v. O'Neal, No. 01-09-00103-CV, 2010 WL 2545609, at *3 (Tex.App.-Houston [1st Dist.] June 24, 2010, no pet.) (mem.op). In a legal sufficiency review, we consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports it. See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.2005); In re S.E.K., 294 S.W.3d 926, 930 (Tex. App.-Dallas 2009, pet. denied). When considering a challenge to the factual sufficiency of the evidence, we consider all the evidence and determine whether the evidence supporting the order is so weak or so against the overwhelming weight of the evidence that the order is clearly wrong and manifestly unjust. See City of Keller, 168 S.W.3d at 822. When the evidence is conflicting, we must presume that the fact-finder resolved the inconsistency in favor of the order if a reasonable person could do so. See id. at 821. The trial court does not abuse its discretion if some evidence of a substantial and probative character exists to support the trial court's decision. S.E.K., 294 S.W.3d at 930. The trial court is in the best position to observe the witnesses and their demeanor, and we give the court great latitude when determining the best interest of a child. Id.

APPLICABLE LAW
A trial court may modify conservatorship of a child if the petitioner proves by a *514 preponderance of the evidence that the modification is in the child's best interest and the circumstances of the child, a conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2010); A.B.P., 291 S.W.3d at 95; Agraz v. Carnley, 143 S.W.3d 547, 553 (Tex.App.-Dallas 2004, no pet.).
The best interest of the child is always the primary consideration in determining issues of conservatorship. See TEX. FAM. CODE ANN. § 156.101; A.B.P., 291 S.W.3d at 96. In the context of residency restrictions, our primary goals are to:
(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
(2) provide a safe, stable, and nonviolent environment for the child; and
(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.
TEX. FAM.CODE ANN. § 153.001(a) (West 2008); see Lenz v. Lenz, 79 S.W.3d 10, 14 (Tex.2002); In re D.M.D., No. 05-07-01045-CV, 2009 WL 280465, at *3-4 (Tex. App.-Dallas Feb. 6, 2009, no pet.) (mem. op.); Bates v. Tesar, 81 S.W.3d 411, 430 (Tex.App.-El Paso 2002, no pet.).
In considering whether a material and substantial change of circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify. A.B.P., 291 S.W.3d at 95; see In re C.C.J., 244 S.W.3d 911, 919 (Tex.App.-Dallas 2008, no pet.). Whether a change in residency is a material and substantial change of circumstances depends on the facts of the case. See Lenz, 79 S.W.3d at 17-18; D.M.D., 2009 WL 280465, at *3-4 (noting additional factors to consider include, depending on the facts of the case, the child's desires, the child's current and future physical and emotional needs, any physical or emotional danger to the child, the parental abilities of the individuals involved and their plans for the child, the stability of the home, acts or omissions by a parent tending to show the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent); Bates, 81 S.W.3d at 430 (noting factors to consider in determining whether relocation is a material and substantial change as including, among others, the distance involved; whether the relocation would deprive the noncustodial parent from regular and meaningful access to the child; the impact of the move on the child's future contact with the noncustodial parent; the motive for the move; the motive for opposing the move; the proximity, availability, and safety of travel arrangements).

DISCUSSION
In this case, Mother complains that there is legally and factually insufficient evidence to support the trial court's modification of conservatorship. She does not attack any specific implied finding, but she argues that the only evidence of a change in circumstances was her "sudden and (questionably) unannounced move ... to Illinois." She argues that there was no evidence W.C.B. suffered any harm from the move, other than "perhaps the distance from his father." And she contends that the court granted Father's petition "as a punishment" for her move to Illinois. She also argues that the evidence shows she was prepared to move back to Texas. Father argues that in addition to the unauthorized move to Illinois, Mother also "intentionally *515 kept the child from visiting with" him for over two months, which was not in the child's best interest.
The trial court heard testimony from three witnesses at the hearing on the petition to modify conservatorship: Father, Mother, and a licensed professional counselor. The evidence was undisputed that after the divorce was final, Father exercised regular weekly visitations with W.C.B.[4] The evidence was also undisputed that at the time the petition to modify was filed Mother had moved the childwithout Father's consent or a court orderfrom Grayson County to Illinois, a distance of over 700 miles.[5]
Mother testified that she and W.C.B. moved to Illinois because of her husband's work. She said her husband worked for the same company in Texas that he does in Illinois and that he came to Texas with his boss. But the company was laying off workers and cutting hours in Texas, so when her husband's boss moved back to Illinois and offered her husband his old job back, he took it. Mother testified that her husband knew about the residency restriction, but she did not know whether he had looked for work in the Grayson County area. She said she told Father in November 2008 that there was a possibility she would need to move, and she said Father refused to agree to lift the residency restriction. She said she left with W.C.B. in late January 2009 and sent Father a letter telling him about their move. The evidence showed that the letter was never delivered to Father. Mother said she never attempted to bring W.C.B. to see his father between the date they moved in January 2009 and the date of the hearing in March because of "the miles ... and then the gas, and the time that [W.C.B.] would be spending traveling." She told Father that "he could have extended summer[s]" with W.C.B. She testified that she did not think it was good for the child "to stay away from his father after he had a two-year routine of seeing him every weekend[.]" She said she did not believe it was fair to Father that he did not get to see the child every weekend as he had in the past and, "if the shoe were on the other foot," she would "be upset, just like him." When she was asked what the remedy was and whether she would move back to Texas, she said, "If that's what this gentleman says I need to do, then yes, I will." She had testified earlier that the "only reason I could foresee moving is if [my husband's] job brought him back down here." Mother testified that only four of her seven children live with her. She said one was kidnapped and two had been adopted. She also testified that she has no problems caring for W.C.B.
Father testified that he learned about the move after it happened when he called to talk to W.C.B. He testified he did not agree to lift the residency restriction. He testified that W.C.B. is very active when he visits: they go to church, watch television, play ball games, visit grandparents, look at cows, go to rodeos, read, and have family time. He testified that W.C.B. gets along well with the other children in Father's *516 household.[6] He also testified that W.C.B. does not have a Gameboy or Nintendo at Father's house, but he does at Mother's house. Father testified that the only problems he has with W.C.B. are
having to get him out of, I guess, deep programming from him being gone two weeks. Get him back in the habit of, you know, using an inside voice, which I think comes fromfrom having to fight for attention over two, maybe three other children in his mother's home. Table manners, phone manners, just normal, you know, etiquette.
Father testified that trips to Illinois to pick up W.C.B. cost him on average $450 per month. He said the airport nearest Mother's house in Illinois was two hours away.
Patty Andrews, a licensed professional counselor, testified that Mother brought W.C.B. to see her in March 2009 after a hearing in this case. At the hearing, the trial court signed temporary orders that awarded visitation every two weeks, so that Mother had W.C.B. for two weeks and Father had W.C.B. for two weeks. Neither Andrews nor Mother thought this visitation schedule was healthy for a child W.C.B.'s age, and Andrews testified that she thought Mother wanted her to recommend a "standard visitation schedule." Andrews testified that removing a three-year-old child from a parent when the child had been seeing that parent consistently three days a week for two years could cause the child to "personalize that and think that's something that he's caused that he doesn't get to see his father." She said the child can "also take that as a grieving issue, because if that's been a consistency in his life, then that's a loss created for him." She said "even a child as young as three can go into a depression and question his own self[-]esteem. It would be treated assort of an abandonment." Mother was asked what she thought about Andrews's testimony about the possible effects on W.C.B., and she said she did not know that a child could experience the kinds of things that Andrews testified about, although she "knew it would bother [W.C.B.]" not to see his father as often.
In summary, the evidence is undisputed that Mother violated the residency restriction in the divorce decree and moved W.C.B. to Illinois without approval from Father or the court. Father presented evidence about what W.C.B.'s life is like when he's with Father, but there is no evidence concerning what W.C.B.'s life is like in Illinois. See D.M.D., 2009 WL 280465, at *4. Father also presented expert testimony that a child W.C.B.'s age can be harmed by a sudden separation from a parent. Although Mother testified she was willing to move back to Texas if ordered to do so, she also testified that the only way she envisioned moving back to Texas was if her husband's job required them to move.
We conclude that a relocation of over 700 miles from Father is a material and substantial change in circumstances. See Bates, 81 S.W.3d at 430. With regard to the best interest of the child, Mother has not argued how any of the factors or policies a court considers in making that determination were wrongly decided in this case. Because the trial court granted Father's petition and gave him the exclusive right to designate W.C.B.'s primary residence, we can infer that the trial court credited Father's testimony over Mother's. *517 See id. And we conclude that there is some evidence of a substantial and probative character to support the trial court's decision. See S.E.K., 294 S.W.3d at 929. Accordingly, we conclude that the trial court did not abuse its discretion by granting Father's petition to modify the parent-child relationship. We resolve appellant's sole issue against her.
We affirm the trial court's order.
NOTES
[1] Father also filed a motion to enforce possession. The petition to modify and the motion to enforce possession were originally filed in Fannin County and later transferred to Grayson County. Mother argues that the record is devoid of a petition to modify. We asked the district clerk to supplement the clerk's record, but it has not been forthcoming. It is undisputed, however, that the trial court heard evidence on the petition to modify and rendered an order on the motion. Consequently, the issue was tried by consent. See In re S.M.V., 287 S.W.3d 435, 441 (Tex.App.-Dallas 2009, no pet.).
[2] Civil procedure rule 297 requires a party to file a notice of past due findings and conclusions if the trial court does not make findings and conclusions within a specified period of time. See TEX.R. CIV. P. 297; Burns v. Burns, 116 S.W.3d 916, 921-22 (Tex.App.-Dallas 2003, no pet.). Failure to file the notice waives a party's ability to complain on appeal about the trial court's failure to file findings and conclusions. Burns, 116 S.W.3d at 922.
[3] The reporter's record from the hearing on the motion for new trial is not in the appellate record.
[4] The divorce decree gave Father weekly visits with W.C.B. from Saturday at 9 a.m. until Monday at 6 p.m. Father testified that there were two weekends around Christmas one year when Mother took W.C.B. to Illinois without Father's permission and he was prevented from exercising his regular visitation with W.C.B. for those weekends.
[5] Mother testified that she thought she filed a motion to lift the residency restriction before she moved, but she did not know if in fact it had been filed, set for a hearing, or if Father was served. The motion is not part of the appellate record.
[6] The record does not indicate whether these children are Father and his wife's children or Father's stepchildren.