

## NUMBER 13-11-00659-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ELTON JAMES SENEGAL D/B/A ELTON'S CONSTRUCTION,**                                    **Appellant,**

**v.**

**CLIFFORD D. HARDEMAN,**                                    **Appellee.**

### On appeal from the 60th District Court of Jefferson County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes Memorandum Opinion by Chief Justice Valdez**

By three issues, appellant, Elton James Senegal d/b/a Elton's Construction, appeals from a judgment entered in favor of appellee, Clifford D. Hardeman, on appellee's claim challenging the validity of a residential construction lien.[1]  We affirm.

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

## I. Background

This case arises from a dispute concerning the performance of a residential construction contract. Appellee commenced this suit after appellant filed a mechanic's and materialman's lien encumbering appellee's property. According to the lien, appellee owed appellant $44,353.39 for labor and materials. Appellee filed suit seeking a declaratory judgment that the lien was invalid. Appellant counterclaimed for unjust enrichment. A bench trial was held, after which the court returned a verdict for appellee. No findings of fact or conclusions of law were requested by the parties or made by the court. A judgment was entered in favor of appellee. This appeal ensued.

## II. Analysis

In three issues, appellant argues: (1) the trial court erred in preventing appellant from presenting evidence of quantum meruit for construction services provided to appellee; (2) the trial court erred in disregarding all evidence of appellant's claim for quantum meruit; and (3) the trial court erred because there was legally sufficient evidence to support a finding that appellant was entitled to maintain his lien for monies owed by appellee.

### A. Issue One

In his first issue, appellant raises a complaint concerning what he describes as the trial court's rulings excluding evidence pertaining to his claim for quantum meruit. Appellant's brief fails to identify any specific ruling by the trial court that is the subject of his complaint. *See* TEX. R. APP. P. 33.1(a)(2). Appellant's brief fails to demonstrate that he preserved any such ruling for appellate review. *See id.* 33.1(a)(1). Moreover, appellant's brief fails to provide a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. *See id.* 38.1(i). Accordingly,

2

we conclude that the issue has been inadequately briefed and presents nothing to review. *See Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 873 (Tex. App.—Fort Worth 2011, no pet.) ("An inadequately briefed issue may be waived on appeal."); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (discussing the "long-standing rule" that a point may be waived due to inadequate briefing). Appellant's first issue is overruled.

## B. Issue Two

In his second issue, appellant complains that the trial court erred in disregarding all evidence of his claim for quantum meruit. In his brief, appellant has combined his three issues together. As noted above, appellant's first issue is that the trial court erred in excluding all evidence of his claim for quantum meruit. Appellant's second issue is that the trial court erred in disregarding all evidence of his claim for quantum meruit.

Appellant's brief fails to identify any specific evidentiary ruling by the trial court that is the subject of his first issue. *See* TEX. R. APP. P. 33.1(a)(2). Appellant has also failed to identify any specific ruling by the trial court that is the subject of his second issue or demonstrate that the issue was preserved. *See id.* 33.1(a)(1)–(2). Moreover, appellant's brief fails to provide a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. *See id.* 38.1(i). We conclude that appellant's second issue is inadequately briefed. Therefore, it is overruled.

## C. Issue Three

In his third issue, appellant contends that the evidence was legally sufficient to support a finding that appellant was entitled to maintain his lien for monies owed by appellee.

### 1. Standard of Review

When an appellant challenges the legal sufficiency of an adverse finding on an issue for which the appellant had the burden of proof, the appellant must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *TH Invs., Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 189 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See Dow*, 46 S.W.3d at 241 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); *TH Invs.*, 218 S.W.3d at 189–90.

If evidence is so weak as to do no more than create a mere surmise or suspicion that the fact exists, then it is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When examining the legal sufficiency of the evidence, we must credit the favorable evidence if a reasonable juror could and disregard the contrary evidence unless a reasonable juror could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* at 822. The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *Wilson*, 168 S.W.3d at 827.

Because appellant did not request findings of fact and conclusions of law, we imply all findings of fact necessary to support the judgment. *See In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.).

**2.    Applicable Law**

As noted above, appellant pleaded a counterclaim for unjust enrichment; however, on appeal, he has characterized that claim as a cause of action for quantum meruit.  Appellee has taken issue with appellant's characterization of the claim and argues that the pleadings do not support a cause of action for quantum meruit.  As appellee points out, it has been said that "unjust enrichment does not provide an independent basis for a cause of action."  *PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 614 (Tex. App.—Corpus Christi 1992, no writ) (citing *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi, 1987, writ denied); *LaChance v. Hollenbeck*, 695 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref'd n.r.e.)).  However, we have also previously noted that "[u]njust enrichment has also been considered [by] some [of] the courts to be synonymous with quantum meruit recovery."  *S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d at 250.

Although it is unclear whether appellant's live pleading, which used the term "unjust enrichment," actually intended to allege a cause of action for quantum meruit, it is clear that the pleading alleged that appellee owed appellant a debt for construction services that appellant had performed in connection with the parties' residential construction contract.  For purposes of addressing appellant's third issue, we will assume without deciding that the pleadings alleged a cause of action for quantum meruit.

The elements of quantum meruit are: "(1) valuable services were rendered or materials furnished (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, and used and enjoyed by him (4) under such circumstances as reasonably notified the person sought to be

5

charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *PIC Realty Corp.*, 832 S.W.2d at 612 (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985); *City of Corpus Christi v. Acme Mech. Contractors, Inc.*, 736 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1987, writ denied)). Quantum meruit is applicable where no express contract exists between the parties. *Concept Gen. Contr., Inc. v. Asbestos Maint. Servs.*, 346 S.W.3d 172, 185 (Tex. App.—Amarillo 2011, pet. denied).

In this case, appellee sued appellant for a declaratory judgment regarding the parties' respective rights and obligations under a written contract. Appellee sought a declaration that the mechanic's and materialman's lien filed by appellant was void because appellee had paid appellant all monies owed under the contract. Appellant sought to defend the validity of the lien by alleging that certain changes and alterations were made to the contract, which entitled appellant to receive additional sums of money from appellee that appellee had refused to pay.

At trial, appellee relied on evidence that included the parties' written contract in the amount of $225,000. Appellee testified that he had paid appellant the full amount of the contract price. With regard to changes and alterations, the contract provided as follows: "No alterations shall be made in the work shown or described by the drawings and specifications, nor shall any extra work or materials be charged or paid for, unless a separate estimate for such extra work is submitted in writing by contractor to owner and agreed to in writing by them before the work is started." Appellee testified that he never agreed to any change orders and did not sign any agreement for any change orders, as required by the parties' contract.

6

Appellee testified that, even after receiving full payment, appellant "walked off the job and would not finish it." Appellee testified in relevant part as follows:

> Well, he came one day to ask for some more money. After I had paid all the money the contract called for plus some extra money, he asked for some more; and I told him that I wasn't giving him any more. He cursed me out, called me some MF's and other things out on my driveway. Told me he was going to put a lien on my house, was going to change the locks [so] that I couldn't get in, and that he wasn't doing another hmm-hmm thing. And he left and he never showed up again.

Appellee also testified that each of the specific items appellant characterized as "changes and alterations" in his live pleading were, in fact, expressly provided for in the parties' written contract. According to appellee, appellant had failed to perform the contract as agreed and was merely attempting to recoup his expenses in having to correct his own errors and do the work properly. Appellee testified that this was not the result of any changes to the original contract, but merely holding appellant accountable for performing the work he agreed to do according to the specifications provided in the contract.

Appellant testified to his version of events. According to appellant, the contract price of $225,000 was based on an inaccurate blueprint for the house, which understated the total square footage by "300-and-some feet." This resulted in extra costs to appellant in the amount of approximately $35,000. Appellant testified, "You can't build that house for no 225." Appellant testified that he did not discover the error until the house was roughly 80-90% completed. According to appellant, appellee was lying when he testified that appellant had walked off the job and refused to complete the work. The work was not completed, according to appellant, because appellee "had done run out of money." Appellant maintained that changes were made to the original

7

contract at appellee's request, which resulted in additional charges. Appellant testified that those changes were never reduced to writing.

On cross-examination, appellant testified that the original contract amount was $295,000, not $225,000. According to appellant, this is the figure he and appellee had "discussed" before he began work on the project. On re-direct examination, appellant clarified that he had accepted a payment from appellee in the amount of $70,000 prior to signing the written contract that specified the contract price of $225,000. This was done informally because, according to appellant, "[W]e kind of like family." It was appellant's understanding that the $225,000 to be paid by appellee under the parties' written contract would be in addition to the $70,000 already paid, for a total of $295,000. Appellant assured the court, "You know, I don't get up in the morning saying I'm going take some money from somebody. I don't do that."

Appellant's testimony continued as follows:

I worked so hard to try to satisfy [appellee] to make sure the work gets done right and he took advantage of me. You understand? I'm just, I'm just telling you. He took advantage of me by adding more to the work and made the job more than what it [was] supposed to be. And we could have did [sic] this house for that amount if he wouldn't have added all this extra work. That's what hurts me.

As noted above, "[W]hen a valid express contract covers the services or materials upon which recovery is sought, recovery in quantum meruit will not be permitted." *See Concept Gen. Contr., Inc.*, 346 S.W.3d at 185. "But, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of services rendered and accepted which are not covered by the contract." *Id.*

In this case, there was conflicting testimony about whether any changes were made to the parties' written contract, which could arguably support recovery in quantum

8

meruit. As noted above, appellee testified that what appellant has characterized as changes and alterations were, in fact, the original specifications provided for in the parties' contract. Appellant gave testimony to the contrary. Appellant also testified that the parties had discussed and agreed on a contract price that was greater than the amount later specified in the parties' written contract. Appellant's testimony also included an assertion that the amount in dispute between the parties was the result of a miscalculation of the contract price due to an erroneous blueprint for the house, which understated its square footage.

In performing its role as the finder of fact, the trial court was required to resolve the foregoing conflicts in the testimony. *See Wilson*, 168 S.W.3d at 820 ("It is the province of the [finder of fact] to resolve conflicts in the evidence"). In reviewing the legal sufficiency of the evidence, we are required to assume that the trial court resolved all conflicts in the evidence in accordance with its verdict. *See id.* ("[C]ourts reviewing all the evidence in a light favorable to the verdict must assume that jurors resolved all conflicts in accordance with that verdict.").

Thus, we must assume that the trial court accepted appellee's testimony, which supports its verdict, and assume that the court rejected those portions of appellant's testimony that were to the contrary. Together with other evidence, including the parties' written contract and evidence of payments made to appellant, appellee's testimony is sufficient to establish that the parties' written contract expressly covered the goods and services for which appellant sought to secure compensation through the filing of his mechanic's and materialman's lien. Furthermore, appellee's evidence, if accepted as true, is sufficient to establish that appellant has been paid all monies owed under the

9

parties' written contract and is not entitled to recover additional amounts in quantum meruit. Accordingly, we overrule appellant's third issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
1st day of November, 2012.